UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN S. VERBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:15-CV-74-TAV-CCS |
| | ) | |
| MORGAN STANLEY | ) | |
| SMITH BARNEY, LLC, and | ) | |
| MORGAN STANLEY & CO., INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil matter is before the Court on the motion to dismiss filed by defendants

Morgan Stanley Smith Barney, LLC ("MSSB") and Morgan Stanley & Co., Inc.

("MSC") [Doc. 10].[1]  Plaintiff filed a response [Doc. 17], and defendants replied [Doc.

19].  The United States Securities and Exchange Commission ("SEC") filed an *Amicus*

*Curiae* brief on behalf of plaintiff [Doc. 22], and defendants responded [Doc. 23].  The

SEC also filed four notices of supplemental authority [Docs. 24, 26, 28, 30], and

defendants responded to each notice [Docs. 25, 27, 29, 31].  After careful consideration

of the complaint and the relevant law, the Court will grant defendants' motion to dismiss

plaintiff's complaint and will dismiss this case.

---

[1] Defendants requested oral argument in their motion to dismiss [Doc. 10], but withdrew
that request in their reply [Doc. 19].

# I. Background[2]

Plaintiff began working for defendant, MSSB, as a financial advisor in November 2006 [Doc. 1 ¶ 9]. Plaintiff alleges that between November 2006 and March 2010, he became aware of numerous criminal activities on the part of both MSSB and some of MSSB's clients [*Id.* ¶ 11]. These activities included fraud upon the government, fraud and wrongdoing in the securities industry, as well as fraud and wrongdoing in publically traded companies [*Id.* ¶ 12].

Plaintiff alleges that he was a confidential source to the Federal Bureau of Investigation ("FBI") during its investigation into Pilot Flying J [*Id.* ¶ 20]. Plaintiff claims that his collaboration with the FBI resulted in ten former employees of Pilot Flying J pleading guilty to fraud-related charges involving a fuel rebate scheme [*Id.* ¶ 20].

During the course of the investigation, plaintiff alleges that he wore a wire and uncovered insider trading activities at MSSB, all in violation of the Sarbanes-Oxley Act [*Id.* ¶ 28]. Plaintiff alleges that he also worked with the Securities and Exchange Commission ("SEC") to uncover insider trading and Sarbanes-Oxley Act violations [*Id.* ¶ 29]. In particular, plaintiff claims to have uncovered insider trading among members of MSSB's Knoxville office and their clients with regard to Miller Energy stock [*Id.* ¶ 30]. On September 20, 2013, plaintiff brought these concerns to the SEC [*Id.* ¶ 48].

---

[2] For the purposes of the motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

In November 2012 and again in March 2013, plaintiff's colleague at MSSB, Brian Massengill, observed plaintiff getting into a black sedan with tinted windows accompanied by what appeared to be federal agents [*Id.* ¶ 13]. Massengill asked plaintiff in November 2012 whether he was working with the FBI and plaintiff stated that he was working with the staff of Congressman John Duncan [*Id.*].

On May 7, 2013, executives at MSSB called plaintiff into a conference room where four other MSSB employees were present, including a lawyer, Daniel Derechin [*Id.* ¶ 14]. Derechin asked plaintiff a series of questions concerning whether plaintiff was cooperating with the FBI [*Id.*]. Plaintiff did not discuss any details of his involvement in any investigation or prosecution, but he alleges that his evasive answers signaled to defendants that he was working with federal and/or state authorities [*Id.* ¶ 16]. During this meeting, the branch manager at MSSB, David Elias, told plaintiff "I am going to take you outside and whip your ass!" [*Id.* ¶ 17]. Plaintiff then got up and left the room [*Id.* ¶ 18]. He called the Knoxville FBI office and related the incident and the physical threat to the FBI [*Id.* ¶ 19].

The next day, Elias told plaintiff he was being placed on temporary leave with pay and that he was not to come into the office or to contact clients [*Id.* ¶ 21]. Plaintiff remained in that status until he was terminated in June 2013 [*Id.*]. Before plaintiff's termination, he brought to defendants' attention the fact that executive employees of defendants' Knoxville branch were violating both SEC regulations and the Sarbanes-Oxley Act [*Id.* ¶ 47].

After Elias placed plaintiff on administrative leave, he advised other financial advisors to inform plaintiff's clients that "Dr. John is in trouble" [*Id.* ¶ 33]. Plaintiff alleges that MSSB slandered plaintiff in his trade to his former clients and others, thus impeding plaintiff's ability to earn a living [*Id.* ¶ 34].

Plaintiff alleges that he was terminated as a result of his involvement in assisting the FBI's investigation [*Id.* ¶ 22]. Per a letter from Elias to plaintiff, referenced in the complaint, defendants assert that plaintiff's cooperation with the FBI was not the cause of plaintiff's discharge [*Id.* ¶ 44]. Rather, according to plaintiff, defendants claim that plaintiff was terminated because of a "gift" plaintiff's daughter received five years earlier [*Id.* ¶ 44].[3] Plaintiff proclaims that defendants' proffered reason is pretextual [*Id.* ¶ 45].

Plaintiff asserts that defendants are currently holding $242,471 of his money [*Id.* ¶ 27]. He also alleges that as a result of defendants' actions, he has suffered acute emotional distress, which has caused substantial physical injuries, including acute gastrointestinal distress, chronic headaches, and episodic impairment of his vision [*Id.* ¶ 56].

---

[3] Defendants elaborate on their stated reason for discharging plaintiff in their memorandum in support of the motion to dismiss [Doc. 11 p. 3–5]. Defendants attach the letter from David Elias to plaintiff dated June 17, 2013, to their memorandum [Doc. 11-1]. Because plaintiff references this letter in his complaint, defendants submit that the Court may consider the letter in deciding the motion to dismiss. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted) (noting that courts may consider a document that is "referred to in the complaint and is central to the plaintiff's claim"). The letter states that the reason for termination was: "Concerns regarding a financial arrangement with a third party agent of a client in which registered representative accepted money from the agent after management informed him he could not do so" [*Id.*]. Defendants contend that plaintiff's allegation that the reason for discharge was "a gift received by Plaintiff's daughter five years earlier" is refuted by the letter itself [Doc. 1 ¶ 44; Doc. 11 p. 3].

4

Plaintiff claims he was terminated because he assisted federal authorities with regard to (1) fraud perpetrated upon the government of the United States; (2) wrongdoing in the securities industry; (3) fraud and other wrongs committed by persons with regard to a publically traded company [*Id.* ¶ 53].

Plaintiff filed a complaint to commence this action against MSSB and MSC [*Id.* at 1]. Plaintiff alleges the following claims: (1) a Sarbanes-Oxley retaliation claim, (2) a Dodd-Frank Act retaliation claim; (3) a False Claims Act retaliation claim; (4) and various state-law claims [*Id.* ¶¶ 1–2]. Defendants filed a motion to dismiss all of plaintiff's claims [Doc. 10].

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor "an unadorned, the-defendant-unlawfully-harmed-

5

me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III. Sarbanes-Oxley Act Retaliation Claim

The Sarbanes-Oxley Act provides whistleblower protection for employees of publically traded companies. 18 U.S.C. § 1514A. In order to pursue a Sarbanes-Oxley retaliation claim in federal court, a plaintiff must first follow some administrative procedures. *See id.* § 1514A(b). A plaintiff must file a complaint with the Secretary of Labor "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." *Id.* § 1514A(b)(2)(D). "[I]f the Secretary has not issued a final decision within 180 days of filing the complaint," then the appropriate district court will have jurisdiction. *Id.* § 1514A(b)(1)(B).

Federal courts lack subject matter jurisdiction over Sarbanes-Oxley retaliation claims where a plaintiff failed to file a complaint with the "Occupational Safety and Health Administration ('OSHA') and afford OSHA the opportunity to resolve the allegations administratively." *Hanna v. WCI Cmtys., Inc.*, 348 F. Supp. 2d 1322, 1326 (S.D. Fla. 2004) (internal quotation marks and citation omitted); *see, e.g.*, *Delmore v. McGraw-Hill Cos., Inc.*, No. 12-CV-1306, 2013 WL 3717741, at *2 (E.D. Wis. July 12, 2013) (dismissing Sarbanes-Oxley claim because failing to exhaust administrative remedies "deprives the district court of jurisdiction to hear that plaintiff's [Sarbanes-Oxley] claim"); *Mart v. Forest River, Inc.*, 864 F. Supp. 2d 577, 608 (N.D. Ind. 2012) (dismissing Sarbanes-Oxley claim because plaintiff failed exhaust his administrative remedies by filing a complaint with OSHA); *Radu v. Lear Corp.*, No. 04-40317, 2005 WL 2417625, at *2 (E.D. Mich. Sept. 30, 2005) (same).

Plaintiff does not allege that he filed a complaint with OSHA before filing his complaint in this Court. The Court, therefore, lacks subject matter jurisdiction over plaintiff's Sarbanes-Oxley retaliation claim. *Delmore*, 2013 WL 3717741, at *2.

Furthermore, plaintiff does not respond to defendants' argument that plaintiff's Sarbanes-Oxley claim should be dismissed on these grounds. It is well established in the Sixth Circuit that failure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim. *Notredan, L.L.C. V. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013); *see also* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any

Case 3:15-cv-00074-TAV-CCS   Document 34   Filed 12/08/15   Page 7 of 27   PageID #: 449

opposition to the relief sought."). Consequently, plaintiff forfeited his Sarbanes-Oxley claim.

## IV.    Dodd-Frank Act Retaliation Claim

Plaintiff brings a claim for whistleblower retaliation under the Dodd-Frank Act. This statute creates a private cause of action for whistleblowers who are subject to retaliatory discharge and permits relief for whistleblowers who prevail in federal court. 15 U.S.C. § 78u-6(h)(1).

Plaintiff's alleged claim lies in 15 U.S.C. § 78u-6, a provision of Dodd-Frank entitled "Securities and whistleblower incentives and protection." Specifically, plaintiff seeks relief under § 78u-6(h)(1)(A), a provision under the subtitle "Protection of whistleblowers" that provides for "Protection against retaliation." The provision reads as follows:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other matter discriminate against, a *whistleblower* in the terms and conditions of employment because of any lawful act done by the *whistleblower*--
>
> (i)    in providing information to the Commission in accordance with this section;
>
> (ii)    in initiating, testifying in, or assisting in any investigation or administrative action of the Commission based upon or relating to such information; or
>
> (iii)    in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, *section 1513(e) of Title 18*, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

*Id.* § 78u-6(h)(1)(A) (emphasis added). Plaintiff contends that his protection lies in clause (iii).

Clause (iii) of § 78u-6(h)(1)(A) provides for a potential cause of action where there is a violation of 18 U.S.C. § 1513(e). *Id.* § 78u-6(h)(1)(A)(iii). Section 1513 is a criminal provision of the United States Code that criminalizes retaliation against a witness, victim, or an informant. Specifically, § 1513(e) of the provision reads as follows:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood, of any person, for providing *to a law enforcement officer* any truthful information relating to the commission or possible commission of any federal offense, shall be fined under this title or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1513(e) (emphasis added). This provision was exclusively a criminal statute with no civil penalties. By including 18 U.S.C. § 1513(e) in the anti-retaliation provision of Dodd-Frank, the statute now provides civil remedies for whistleblowers when their employer retaliates against them for providing "truthful information to a law enforcement officer relating to the commission or possible commission of any federal offense." *Id.*; 15 U.S.C. § 78u-6(h)(1)(A)(iii).

Plaintiff asserts that, because he disclosed to the FBI potential violations of federal law, and defendant retaliated against him for that reason, he now has a civil remedy pursuant to § 78u-6(h)(1)(A)(iii) of Dodd-Frank.

9

At issue in this case is whether plaintiff is protected under this provision; that is, whether he classified as a whistleblower at the time the alleged retaliation took place. *See* 15 U.S.C. § 78u-6(h)(1)(A) (providing retaliation protections only to "whistleblowers"). The Dodd-Frank Act has a definition section, and states that "[t]he term 'whistleblower' means any individual who provides . . . information relating to a violation of the securities laws to the Commission." *Id.* § 78u-6(a)(6). The act provides that this definition "shall apply" to the term when used within the section. *Id.* § 78u-6(a).

It is undisputed that plaintiff did not qualify as a whistleblower, under the definition provided in § 78u-6(a)(6), at the time he was terminated. At that time, he had not yet provided any information "to the Commission," that is, to the SEC. He filed a complaint with the SEC on September 20, 2013, over three months after he was terminated [Doc. 1 ¶ 48].

Instead, plaintiff contends that that definition of whistleblower provided in § 78u-6(a)(6) cannot apply to clause (iii) of § 78u-6(h)(1)(A) because there would then be resulting tension between the two provisions. He argues that clause (iii) expands the Dodd-Frank protections, allowing for retaliation protection when employees reveal information to entities other than the SEC, such as the FBI. Plaintiff maintains that the definition provided in § 78u-6(a)(6) is too narrow, and consequently, cannot apply to clause (iii) of § 78u-6(h)(1)(A).

The SEC—to whom Congress delegated authority to administer the whistleblower provisions of Dodd-Frank—promulgated a final rule providing a new and more

10

expansive definition of whistleblower within the context of § 78u-6(h)(1)(A).[4]  In the

comments to the rule, the SEC explained that "the rule reflects the fact that the statutory

anti-retaliation protections apply to three different categories of whistleblowers, and the

third category includes individuals who report to persons or governmental authorities

other than the Commission." Securities Whistleblower Incentives and Protections, 76

Fed. Reg. 34300-01, 2011 WL 2293084, at *34304 (2011).  This SEC definition of

whistleblowers would protect those employees who report to "[a] Federal regulatory or

law enforcement agency," even if the employee did not report to the SEC.  *Id.* Plaintiff's

actions, providing information to the FBI but not to the SEC, would therefore put him

within the confines of the SEC definition of whistleblower.

---

[4] The SEC regulation states as follows:

(b) Prohibition against retaliation.

    (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u–6(h)(1)), you are a whistleblower if:

        (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

        (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u–6(h)(1)(A)).

        (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F–2.

Plaintiff's Dodd-Frank claim, consequently, hinges on whether the Court determines that the SEC regulation, extending Dodd-Frank's anti-retaliation protection to employees who reported violations to persons or governmental authorities other than the SEC, is entitled to *Chevron* deference. Determination as to whether an agency interpretation is permissible requires two steps: first, the Court must decipher whether there is an "unambiguously expressed intent of Congress," and "if the statute is silent or ambiguous," the Court must then decide whether the agency's interpretation is "based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

While there is currently a circuit split on whether Congress unambiguously expressed its intent in the statute, neither this Court, nor the Sixth Circuit, have opined on the issue. This issue is therefore a matter of first impression for the Court.[5]

The Second Circuit and several district courts, have found ambiguity in the statute, given the SEC *Chevron* deference, and applied the SEC regulation. *See e.g.*, *Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 153–55 (2d Cir. 2015); *Lutzeir v. Citigroup Inc.*, No. 4:14-cv-183, 2015 WL 7306443, at *2–3 (E.D. Mo. Nov. 19, 2015); *Somers v. Digital Realty Trust, Inc.*, — F. Supp. 3d —, No. C-14-5180 EMC, 2015 WL 4483955, at *4–12 (N.D. Cal. July 22, 2015); *Yang v. Navigators Grp., Inc.*, 18 F. Supp. 3d 519, 533–34 (S.D.N.Y. 2014); *Khazin v. TD Ameritrade Holding Corp.*, No. 13-4149 (SDWQ)(MCA),

---

[5] The only district court within the Sixth Circuit that has previously ruled on this issue applied the SEC regulation, but that decision was prior to any relevant Court of Appeals decisions which are discussed *infra*. *See Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D. Tenn. 2012).

2014 WL 940703, at *3–6 (D.N.J. Mar. 11, 2014); *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-KHV, 2014 WL 707235, at *2–3 (D. Kan. Feb. 24, 2014); *Ellington v. Giacoumakis*, 977 F. Supp. 2d 42, 44–46 (D. Mass. 2013); *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106–07 (D. Colo. 2013); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D. Tenn. 2012); *Kramer v. Trans–Lux Corp.*, No. 3:11CV1724 SRU, 2012 WL 4444820, at *4 (D. Conn Sept. 25, 2012).

The Fifth Circuit and several other district courts disagree. These courts have found that the statute is clear, have declined to give the SEC regulation any credence, and have applied the definition of whistleblower provided in § 78u-6(a)(6). *See, e.g.*, *Asadi v. G.E. Energy (USA) LLC*, 720 F.3d 620, 623, 630 (5th Cir. 2013); *Wiggins v. ING U.S., Inc.*, 2015 WL 3771646, at *9 –11 (D. Conn. June 17, 2015); *Verfueth v. Orion Energy Sys. Inc.*, No. 14-C-352, 2014 WL 5682514, at *1–4 (E.D. Wis. Nov. 4, 2014); *Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 756–57 (N.D. Cal. 2013); *Wagner v. Bank of Am. Corp.*, No. 12-cv-00381-RBJ, 2103 WL 3786643, at *4–6 (D. Colo. July 19, 2013).

In deciding whether to apply the SEC regulation, the Court will first focus on whether there is an "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. "If the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*,— U.S. —, 135 S. Ct. 2480, 2489 (2015). "The preeminent canon of statutory interpretation requires [the Court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (second alteration in original) (quoting *Conn. Nat'l Bank v.*

13

*Germain*, 503 U.S. 249, 253–54 (1992)).  If the statutory text is unambiguous, the Court's inquiry begins and ends with the text.  *Id.* at 183.

The Dodd-Frank anti-retaliation provision states that: "No employer may discharge . . . or in any manner discriminate against, a *whistleblower* . . . because of any lawful act done by the *whistleblower*" in taking any of the three categories of protection actions. 15 U.S.C. § 78u-6(h)(1)(A) (emphasis added).  "This statutory language clearly answers two questions: (1) who is protected; and (2) what actions by protected individuals constitute protected activity." *Asadi*, 720 F.3d at 625 (citing 15 U.S.C. § 78u-6(h)(1)(A)).  Whistleblowers are the protected parties, and they are protected from retaliation in response to "any lawful act done by the whistleblower" that falls within one of the three categories described in the statute.  15 U.S.C. § 78u-6(h)(1)(A).

Within the Dodd-Frank Act, the drafters provide only one definition of a whistleblower, and it is found in the definition section.  *Id.* § 78u-6(a)(6).  "[W]hen an exclusive definition is intended the word 'means' is employed." *Groman v. IRS*, 302 U.S. 82, 86 (1937) (describing a definition that uses the term "means" as exclusive, and a definition that uses that term "includes" as nonexclusive).  The definition in § 78u-6(a)(6) states that: "[t]he term 'whistleblower' *means* any individual who provides . . . information relating to a violation of the securities laws to the Commission."  15 U.S.C. § 78u-6(a)(6) (emphasis added).  "This definition, standing alone, expressly and unambiguously requires that an individual provide information to the SEC to qualify as a 'whistleblower' for purposes of § 78u-6." *Asadi*, 720 F.3d at 623.

14

The anti-retaliation provision of the Act, § 78u-6(h)(1)(A), does not provide an alternate definition of whistleblower. Based on the plain text, therefore, the § 78u-6(a)(6) definition of whistleblower would apply to the anti-retaliation provision. *See* 15 U.S.C. § 78u-6(a) (noting that the definition "shall apply" throughout the section); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (describing a definition that uses the term "means" as exclusive, and a definition that uses that term "includes" as nonexclusive); *Tenn. Prot. & Advocacy, Inc. v. Wells*, F.3d 342, 350 (6th Cir. 2004) (citation omitted) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 226 (1st ed. 2012) ("When . . . a definition section says that a word 'means' something, the clear import is that this is its *only* meaning." (emphasis in original)).[6]

---

[6] Both the Second and the Fifth Circuit relied on the Scalia and Garner treatise when determining the definition of whistleblower in the Dodd-Frank Act. *Berman*, 801 F.3d at 154, 154 n.10; *Asadi*, 720 F.3d at 623. The Fifth Circuit relied on the source for the same reason this Court cites it. *Asadi*, 720 F.3d at 623 (citing Scalia & Garner, *supra*, at 226). The Second Circuit relied on the source when arguing that while the terms of a definitional section are generally taken literally, "[d]efinitions are, after all, just one indication of a meaning—a very strong indication, to be sure, but nonetheless can be contradicted by other indications." *Berman*, 801 F.3d at 154 (citing Scalia & Garner, *supra*, at 227–28). The Second Circuit also cites the treatise to bolster the argument that ambiguity arose in the statute because of the realities of the legislative process. *Id.* at 154, 154 n.10 ("True ambiguity is almost always the result of carelessness or inattention." (quoting Scalia & Garner, *supra*, at 33)).

While the Sixth Circuit has not addressed the Dodd-Frank Act definition of whistleblower, the Sixth Circuit has previously cited to the Scalia and Garner treatise. *See Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 225 (6th Cir. 2015); *Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 847 (6th Cir. 2015); *Barbee v. Union City Bd. of Educ.*, 558 Fed. App'x 450, 455 n.4 (6th Cir. 2014); *Miller v. Mylan Inc.*, 741 F.3d 674, 678 (6th Cir. 2014); *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. App'x 567, 568 (6th Cir. 2013); *United States v. Blewett*, 719 F.3d 482, 487 (6th Cir. 2013).

Also noteworthy is the fact that the drafters chose to use the term whistleblower, rather than "individual" or "employee," in describing who is protected. In the Sarbanes-Oxley whistleblower-protection provision, Congress used the generic term "employee." 18 U.S.C. § 1514(a) (a publically-traded company may not "discriminate against an employee" because of lawful whistleblowing activity). This deliberate choice suggests that Congress intended on limiting the scope of those protected by the anti-retaliation provision in Dodd-Frank as opposed to those protected by Sarbanes-Oxley, as "[a] definition is one of the 'prominent manner[s]' for limiting the meaning of statutory text." *Berman*, 801 F.3d at 156 (Jacobs, J., dissenting) (alteration in original) (quoting *King*, 135 S. Ct. at 2495). Because "Congress . . . used the term 'whistleblower' throughout subsection (h) . . . we must give that language effect." *Asadi*, 720 F.3d at 627.

Congress also used the term whistleblower several times within the provision. The title of the provision is "Protection of *whistleblowers*," and the provision uses the term two additional times: "No employer may discharge . . . a *whistleblower* . . . because of any lawful act done by the *whistleblower*." 18 U.S.C. § 78u-6(h) (emphasis added). If Congress intended on a broader protection, it is unlikely that the drafters would mistakenly title the provision and include the phrase whistleblower several more times when the term has a limited definition within the statute.

The SEC argues in its *Amicus* brief that using the definition provided in § 78u-6(a)(6) would render clause (iii) of § 78u-6(h)(1)(A) superfluous [Doc. 54 p. 21]. "It is a

16

cardinal principle of statutory construction that a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citations omitted).

While clauses (i) and (ii) already address situations where a whistleblower is terminated for providing information to the SEC, clause (iii) would protect plaintiff in a situation where he provided information to both the SEC and the FBI, but defendants were only aware of the disclosure to the FBI and terminated plaintiff for that reason. *See Asadi*, 730 F.3d at 627 (examining a hypothetical situation where an employee provided information to both the SEC and to internal managers, but defendants were only aware of the internal reporting and terminated plaintiff for that reason). Even though clause (iii) is limited by the definition provided in § 78u-6(a)(6), that limitation does not render the provision "superfluous." There is "no support for the proposition that when a plain reading of a statutory provision gives it an 'extremely limited' effect, the statutory provision is impaired or ambiguous." *Berman*, 801 F.3d at 158 (Jacobs, J., dissenting); *see also Asadi*, 730 F.3d at 628 (finding that clause (iii) is not superfluous because it has some meaning).

Further, in *Berman*, the Second Circuit applied the SEC regulation partly because it concluded that if the § 78u-6(a)(6) definition applied, clause (iii) would protect a

plaintiff only if there were simultaneous complaints to the SEC and another party.[7]

*Berman*, 801 F.3d at 150–51. For that reason, the court assumed that this would be a

"rare example," and Congress would not bother adding a provision with such a limited

effect. *Id.* at 152. However, as the dissent in *Berman* pointed out, the majority in the

case "[did] not explain why simultaneous reporting is required." *Id.* at 158 (Jacobs, J.,

dissenting). This Court agrees, and cannot see why simultaneous reporting would be

required under the statute. *Id.* (Jacobs, J., dissenting). Further, the Fifth Circuit did not

find that the statute requires simultaneous reporting. *Asadi*, 720 F.3d at 627–28. Because

the majority in *Berman* made an assumption regarding the need for the reporting to be

simultaneous, the court in that case, unlike the Fifth Circuit, unnecessarily limited the

impact of clause (iii).

The SEC and the Second Circuit rely on the recent Supreme Court opinion in *King*

*v. Burwell* to support a theory of broad statutory interpretation [Doc. 26]. *Berman*, 801

F.3d at 146, 150–51. In *King*, the Supreme Court found that a provision of the

Affordable Care Act ("ACA") providing for income tax subsidies to those who purchased

health insurance on exchanges "established by the State" was ambiguous and that the

phrase should refer to both state and federal exchanges. 135 S. Ct. at 2483. This is

because a divided Supreme Court accepted the argument that a contrary interpretation of

---

[7] In *Berman*, the plaintiff alleged that his employer retaliated against him for internal reporting of securities violations. 801 F.3d at 148–49. In this case, however, plaintiff alleges that defendant retaliated against him for reporting to the FBI. As in this case, the plaintiff in *Berman* had also failed to report to the SEC before he was terminated. *Id.* The SEC regulation encompasses internal reporting, and the plaintiff in *Berman* qualified as a whistleblower under the SEC regulation. While the "other party" in this case is different from the one in *Berman*, whether to apply the SEC regulation is the central dispute in both cases.

the ACA would fail to provide tax credits and effective health insurance to individuals otherwise covered by the ACA—two of the three primary reforms of the ACA. *Id.* at 2493–94. Put another way, the entire statutory scheme of the ACA would have been undermined if the Court did not construe the statute broadly in *King*. "To the extent that the Supreme Court departed from the plain statutory text in *King v. Burwell*, it expressly relied on most unusual circumstances." *Berman*, 801 F.3d at 159 (Jacobs, J., dissenting).

Those unusual circumstances are not present in this case. Plaintiff has provided no argument for why construing the statute in accordance with its unambiguous, plain text would controvert the statutory scheme of the Dodd-Frank Act, let alone to the extent described in *King*. Plaintiff argues that because the overall purpose of Dodd-Frank was to remedy a perceived problem in the financial sector, the Court should construe the statute broadly. But, the Court is not to disregard the unambiguous text of a statute in order to achieve broad statutory aims. "The broad remedial goals of the Act . . . are insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit." *Sandusky Wellness Ctr., LLC v. Medco Health Sols, Inc.*, 788 F.3d 218, 224 (6th Cir. 2015) (citing *Pinter v. Dahl*, 486 U.S. 622, 653 (1988)) (refusing to construe the Telephone Consumer Protection Act broadly in light of the statute's remedial purpose).

Further, *King* does not stand for the proposition of finding ambiguity when there is no ambiguity. The SEC and the Second Circuit are attempting to apply *King*, but "*King v. Burwell* is not a wholesale revision of the Supreme Court's statutory interpretation

19

jurisprudence, which for decades in the past has consistently honored plain text over opportunistic inferences about legislative history and purpose." *Berman*, 801 F.3d at 159 (Jacobs, J., dissenting); *see also Asadi*, 720 F.3d at 622 (emphasizing the Supreme Court precedent establishing the primacy of the statutory text).

Other than the text, Congress did not leave behind guidance on the statutory aims of clause (iii). The legislative history does not indicate either an intent to apply the § 78u-6(a)(6) definition of whistleblower, or not. The legislative materials do not even mention cause (iii), much less the clause's meaning or intended purpose. The lack of legislative history is somewhat telling, however. If using a particular definition was so integral to the statutory scheme, Congress likely would have mentioned it. Unlike in *King*, therefore, there is no reason to look past the plain statutory text. Without contrary evidence from Congress regarding its intention when drafting clause (iii), the Court will presume that Congress "says in a statute what it means and means in a statute what it says there.'" *BedRoc*, 541 U.S. at 183.

The majority in *Berman* focuses on the fact that clause (iii) was a late-added provision to explain why there is limited legislative history, and why Congress may not have intended the term whistleblower used in clause (iii) to be limited by the definition in § 78u-6(a)(6). *Id.* at 152–55. The court blames the "legislative process" for the idea that clause (iii) and the definition of whistleblower "do not fit together neatly." *Id.* at 155. However, the fact that clause (iii) was a late-added provision is persuasive evidence that this provision was not so integral to the statutory scheme to warrant a departure from the

text as in *King*.  If clause (iii) was so integral to the statutory scheme of Dodd-Frank, it likely would have been in discussion from the start, rather than being a late-added provision.

Here, the consequence of applying the plain text definition of whistleblowers to clause (iii) of § 78u-6(h)(1)(A) is that individuals like plaintiff will be protected under Sarbanes-Oxley, but not under Dodd-Frank.  While the shorter statute of limitations in Sarbanes-Oxley may be inconvenient for some plaintiffs and, as in this case, may prevent relief under Sarbanes-Oxley, that prospect does not threaten the entire Dodd-Frank statutory scheme. *Id.*

As noted above, determination as to whether an agency interpretation is permissible requires two steps: first, the Court must decipher whether there is an "unambiguously expressed intent of Congress," and "if the statute is silent or ambiguous," the Court must then decide whether the agency's interpretation is "based on a permissible construction of the statute."  *Chevron,* 467 U.S. at 837.  The Court finds that the Dodd-Frank Act is unambiguous on this issue, and consequently, the Court will not give deference to the SEC regulation.  Because plaintiff did not provide information to the SEC before his termination, he does not qualify as a whistleblower as defined in Dodd-Frank and has no protection under § 78u-6(h)(1)(A).

## V.      False Claims Act Retaliation Claim

The False Claims Act ("FCA") "protects 'whistleblowers' who pursue or investigate or otherwise contribute to a *qui tam* action, exposing fraud against the United States government."  *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2008) (citing 31 U.S.C. §§ 3729–30).  Plaintiff is specifically seeking relief under § 3730, a provision that affords protection against retaliation for individuals with knowledge of fraud on the government and who engage in protected activity under the FCA.  31 U.S.C. § 3730.  In pertinent part, § 3730 provides relief to employees who are discharged because of "lawful acts done by the employee . . . in furtherance of an action under section [3730] or other efforts to stop 1 or more violations of this subchapter." *Id.* § 3730(h).

To state a claim for retaliatory discharge under the FCA, a plaintiff must allege that: (1) he engaged in protected activity; (2) his employer knew he engaged in protected activity; and (3) his employer discharged or otherwise discriminated against him as a result of the protected activity.  *McKenzie*, 219 F.3d at 514.  In order to show he engaged in protected activity, a plaintiff must allege that he engaged in activities that either: (1) were in furtherance of a *qui tam* action under § 3730 of the FCA; or (2) were in effort to stop one or more violations of the FCA.  31 U.S.C. § 3730(h).

"In order to demonstrate retaliatory discharge based on the first type of protected activity, a plaintiff must allege that 'the defendant has been put on notice that the plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA

action brought by the government.'" *Kem v. Bering Straits Info Tech.*, No. 2:14-cv-263, 2014 WL 5448402, at *3 (S.D. Ohio Oct. 22, 2014) (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 567 (6th Cir. 2003)) (other citations omitted).  For the second type of protected activity, "an employee must be pursuing an effort to stop a *specific* violation (or potential violation) of the FCA of which he or she is aware."  *Id.* (emphasis in original) (citing 31 U.S.C. § 3730(h) and listing cases).

Here, plaintiff has not pled that he took any action in furtherance of a *qui tam* action or that he assisted in an FCA action brought by the government.  Consequently, plaintiff has not pled the first type of protected activity under the FCA.

Plaintiff, therefore, must be relying on the second form of protected activity, that is, taking actions in effort to stop one or more violations of the FCA.  To constitute an effort to stop a specific (or potential) violation of the FCA, an employee's conduct must be aimed at stopping specific fraudulent claims against the government.  *See, e.g.*, *McKenzie*, 219 F.3d at 516 (stating that to constitute protected activity, "the internal reports must allege fraud on the government"); *Watts v. Lyon Cty. Ambulance Serv.*, No. 5:12-CV-00060-TBR, 2013 WL 557274, at *9 (W.D. Ken. Feb. 12, 2013) (dismissing FCA whistleblower retaliation claim because the plaintiff did not plead "any fraud on the government").

Here, in relation to the FCA claim, the complaint alleges: (1) "The criminal activities observed by Plaintiff involved, without limitation . . . fraud upon the United

23

States"; and (2) "Plaintiff has been fired because he assisted Federal Authorities with regard to [] fraud perpetrated on the Government of the United States" [Doc. 1 ¶¶ 12, 53].

Such general conclusions, however, are "not entitled to the assumption of truth" by a court considering a Rule 12 motion. *Iqbal*, 556 U.S. at 679. Conclusions "must be supported by factual allegations" to state a claim and meet the Rule 8 pleading requirements. *Id.*; *see also Twombly*, 550 U.S. at 556, n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (citation omitted); *Kachaylo v. Brookfield Twp. Bd. of Trs.*, 778 F. Supp. 2d 814, 819 (N.D. Ohio 2011) (dismissing FCA retaliation claim because allegations that plaintiff "investigated and assisted Federal investigation of the false claims" and "engaged in protected activities" were "general conclusions" that were "not entitled to the assumption of truth"); *U.S. ex Rel. Howard v. USA Envtl., Inc.*, No. 8:06-cv-27-T-33MAP, 2009 WL 652433, at *6 (S.D. Fla. Mar. 12, 2009) (dismissing FCA retaliation claim because the allegations that plaintiff took actions "in furtherance of a False Claims Act action" were not supported by any facts related to the submission of a false claim to the government).

Plaintiff's other allegations about providing assistance to the federal authorities relate to his alleged assistance to the FBI in its investigation and prosecution of fraud against "trucking company customers" and his alleged assistance to the SEC concerning insider trading in a publically traded company [Doc. 1 ¶¶ 20, 29–32, 53]. These

allegations, however, are connected to false claims or fraud against parties other than the government. Consequently, plaintiff has not adequately alleged any facts showing he engaged in protected activity in connection with his FCA retaliation claim.

In response to defendants' argument regarding plaintiff's failure to adequately plead facts plausibly showing that he engaged in "protected activity," plaintiff stated the following: "Undersigned counsels represents to the Court that Defendants are in error on this point. Plaintiff will answer specific inquiries from the Court on this subject under seal" [Doc. 17 p. 4 (emphasis in original)].

The Court notes that, pursuant to 18 U.S.C. § 3730(b), the complaint in *qui tam* actions is required to be "filed in camera" and "shall remain under seal for at least 60 days." There is no such requirement, however, for FCA retaliatory actions pursuant to § 3730(h). Additionally, both the United States Department of Justice and federal courts have explained that nothing in the FCA prevents an individual from disclosing the existence of fraud or false claims against the government. *See, e.g.*, *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 254 (4th Cir. 2011) ("[T]he seal provisions limit the realtor only from publically discussing the filing of the qui tam complaint. Nothing in the FCA prevents the qui tam relator from disclosing the existence of the fraud."); Br. For Dept. of Justice, ECF No. 34 at 14, *Am. Civil Liberties Union v. Holder*, No. 09-2086 (4th Cir. 2011) (discussing how the seal does not prohibit a relator from disclosing the facts underlying allegations of fraud).

The Court, therefore, sees no reason to seal the factual basis underlying plaintiff's claim of fraud on the government. Further, plaintiff has not given the Court any reason or legal authority to do so. At no point in this litigation has plaintiff moved the Court or asked for leave to amend the complaint under seal. Even in his response to defendants' motion to dismiss, plaintiff still did not ask for leave to amend the complaint under seal [Doc. 17 p. 4]. He did not contemporaneously file a motion for leave to amend the complaint under seal or proffer an amended complaint. To this date, plaintiff has still not filed such a motion.

Pleading deficiencies may be remedied by amending the complaint under Federal Rule of Civil Procedure 15. As noted above, plaintiff did not seek leave to amend his complaint or proffer an amended pleading. Plaintiff states that he will "answer specific inquiries from the Court" regarding his failure to plead action under the FCA. However, it is not the Court's role to inquire about deficient pleadings and to invite plaintiff to cure the deficiencies, and the Court is under no obligation to *sua sponte* grant a represented plaintiff leave to amend deficiencies in the complaint. *Brown v. Matauszak*, 415 F. App'x 608, 615–16 (6th Cir. 2011). "[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008) (citing *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041–42 (6th Cir. 1991)). "It is not the district court's responsibility to rescue [plaintiff] by giving [him] another

26

opportunity to get it right." *Id.* The Court, therefore, declines to *sua sponte* give plaintiff leave to amend his complaint.

Because plaintiff did not adequately plead facts to support that he engaged in protected activity, the Court will dismiss plaintiff's FCA retaliation claim.

## VI.  Tennessee State-Law Claims

Plaintiff alleges state-law claims in his complaint. While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, "[o]rdinarily, where all federal claims have been dismissed, federal courts should decline to exercise supplemental jurisdiction over state law claims. *Reynosa v. Schultz*, 282 F. App'x 386, 390–91 (6th Cir. 2008); *see also* 28 U.S.C. § 1367(c)(3). Having found the federal claims should be dismissed on defendants' motion to dismiss, pursuant to § 1367(c), the Court will decline to exercise continuing supplemental jurisdiction over plaintiff's state-law claims.

## VII.  Conclusion

For the reasons set forth herein, defendants' motion to dismiss plaintiff's complaint [Doc. 10] is hereby **GRANTED**, and all claims against all defendants will be **DISMISSED**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

27